IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**NICHOLAS LACY**,

      **Petitioner,**

v.                                                 Case No.: 5:20-cv-00582

**D.L. YOUNG, Warden,**

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Nicholas Lacy's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 and Respondent D.L. Young's request that the action be dismissed (ECF Nos. 1, 6). This case is assigned to the Honorable Frank W. Volk, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241; **GRANT** Respondent's request to dismiss; and **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

**I.**      **Factual and Procedural Background**

Lacy is a federal prisoner currently housed at Federal Correctional Institution ("FCI") Elkton in Lisbon, Ohio. At the time he filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, he was housed at FCI Beckley in Beaver, West

1

Virginia. (ECF No. 1). The petition, which was mailed to the Court on September 3, 2020, challenges the disciplinary proceedings Lacy underwent for violation of Code 110, Refusing to Provide a Urine Sample ("Code 110"). Lacy asserts that he was instructed by FCI Beckley staff to provide a urine sample on April 24, 2019; however, he could not comply, because the side effects of his multiple medications and his diagnosed benign prostatic hyperplasia ("BPH") prevented him from urinating. (*Id.* at 6). Lacy contends that he did not "refuse" to provide the sample; instead, he was physically unable to provide it. He argues that punishing him for a physical impairment that was beyond his control violates his Fifth Amendment right to due process. (*Id.*). Lacy posits that he was unconstitutionally punished with the loss of good conduct time ("GCT") in contravention of federal law as announced in *Kingsley v. Bureau of Prisons*, 937 F.2d 26 (2d Cir. 1991). (*Id.*). For relief, Lacy asks the Court to grant his petition, expunge Incident Report No. 3249208, and reinstate his GCT. (*Id.* at 7).

On September 11, 2020, the undersigned ordered Respondent to answer or otherwise respond to Lacy's petition showing cause why relief should not issue. (ECF No. 5). On September 24, 2020, Respondent filed a response to the Court's order. (ECF No. 6). According to Respondent, Lacy was provided a copy of the incident report charging him with violating Code 110 on April 25, 2019, at which point he affirmed that he understood his rights and offered no comment. (*Id.* at 2). Respondent contends that at the Unit Disciplinary Committee hearing, Lacy stated "I did not refuse, I was just unable to go." (*Id.*). The matter was referred to the Disciplinary Hearing Officer ("DHO"), and Respondent alleges that Lacy was advised of his rights and given notice of the DHO hearing but did not sign the forms indicating as much because he was in restraints. (*Id.* at 2–3).

Lacy was first brought before the DHO on May 28, 2019. (ECF No. 6-1 at 22). After Lacy successfully appealed the findings to the Regional Director, the matter was sent back to the DHO and reheard on November 13, 2019. (*Id.*). At the second hearing, Lacy waived his right to a staff representative, submitted no documentary evidence or witnesses, and stated that he was unable to urinate because of his cholesterol medication. (ECF No. 6 at 3). The prison medical services was contacted, and nurse practitioner "S. Vest" opined that there was "nothing in [Lacy's] medical record that would cause any conflicts regarding the inmate providing a urine sample when requested." (*Id.*; ECF No. 6-1 at 29). The DHO found Lacy guilty of the Code 110 charge based upon the reporting officer's statement, the information from the nurse practitioner, the form showing that Lacy did not provide a sample, Lacy's statements, and the lack of evidence indicating that Lacy had a medical or psychological condition that hampered his ability to urinate. (ECF No. 6-1 at 26).

Respondent argues that the petition should be dismissed because Lacy failed to exhaust his administrative remedies. (*Id.* at 8). He points out that Lacy failed to timely file an appeal to the Central Office after his regional-level appeal was rejected. (*Id.* at 11). Respondent also argues that the disciplinary procedure complied with the due process requirements outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). (*Id.* at 13). Respondent asserts that the evidence relied upon by the DHO is sufficient to meet the standard announced in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985), because the DHO relied on at least "some evidence" to find that Lacy had committed the offense. (*Id.* at 13–14). Respondent claims that Lacy did not present a list of medication side effects at his DHO hearing or mention his medication issues to prison staff when they attempted to collect a sample from him. (*Id.* at 15). He also notes that Lacy had no documented history

3

of being treated for such a side effect of his medication. Respondent asks that the Court dismiss the action. (*Id.* at 16).

On December 14, 2020, Lacy filed a memorandum in opposition to Respondent's request for dismissal, which the undersigned construes as a reply to Respondent's response. (ECF No. 10). Lacy reiterates that he was unable to provide a urine sample due to the effects of his prescribed medication and enlarged prostate. (*Id.* at 3–5). Lacy, characterizing the above-described second DHO hearing as "uncalled-for," posits that he was not afforded the due process protections enunciated in *Wolff*. (*Id.* at 6).

Further, Lacy argues that his petition should not be dismissed for failure to exhaust because his attempts to obtain a Central Office appeal form were thwarted by prison staff. (*Id.* at 7–10). He adds that despite these challenges, he eventually did obtain an appeal form and submitted it to the Central Office, so he has exhausted his grievances. (*Id.* at 10). Lacy argues that DHO Harvey failed to consider the side effects of Lacy's medications when he rendered his decision at the second hearing. (*Id.* at 11). Lacy criticizes DHO Harvey's reliance on the nurse practitioner's opinion, and the DHO's "myopic" view of Lacy's medical conditions and medication side effects. (*Id.* at 11–12). Lacy contends that DHO Harvey was biased and prejudicial in the hearing. (*Id.* at 12–13).

Lacy next claims that the BOP Regional Director and Central Office general counsel "arbitrarily and capriciously ignored the documented medical fact" of Lacy's BPH diagnosis and the effect of this condition on his ability to provide a urine sample. (*Id.* at 14–15). Finally, Lacy argues that federal caselaw prevents him from losing GCT if he is unable to produce a urine sample, again citing *Kingsley*. (*Id.* at 16–18).

## II. **Standard of Review**

Respondent does not identify the standard under which he seeks dismissal of

4

Lacy's petition; however, Respondent filed the response concurrently with the request for dismissal. Therefore, the request should be treated as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion for judgment on the pleadings applies the same standard of review as a motion to dismiss filed under Rule 12(b)(6), and both motions may be filed in habeas actions. (*Id.* at 138–39); *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. (*Id.*) The Court "may also consider documents attached to the complaint … as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

#### A. *Exhaustion of administrative remedies*

Respondent argues that Lacy's petition should be dismissed based on his failure to exhaust administrative remedies because even though Lacy appealed to the Central Office, his claim was denied as untimely. (ECF No. 6 at 8–13). Lacy disagrees, claiming he was prevented from appealing to the Central Office by uncooperative prison staff who refused to give him appeal forms, but notes that nevertheless he eventually did submit his appeal and has therefore exhausted his remedies. (ECF No. 10 at 7–11).

Generally, an inmate should exhaust adequate alternative remedies before filing a writ of habeas corpus in federal court. *Boumediene v. Bush*, 553 U.S. 723, 782 (2008); *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (an inmate must exhaust administrative remedies before filing a § 2241 petition) (citations omitted). Habeas relief under 28 U.S.C. § 2241 is always available "to safeguard the fundamental rights of persons wrongly incarcerated," but it is an "avenue of last resort." *Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010) (citing *Martin-Trigona v. Shiff*, 702 F.2d 380, 388 (2d Cir. 1983)). Although § 2241 does not contain a statutory exhaustion requirement, courts have consistently required prisoners to exhaust their administrative remedies before seeking habeas review under § 2241. *See, e.g.*, *Timms*, 627 F.3d at 530-33 (requiring exhaustion in a § 2241 matter); *McClung,* 90 Fed. Appx. at 445 ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being hauled into court. *Arbaugh v. Berkebile*, No. CIVA 5:10-0528, 2010 WL 5481198, at *3 (S.D.W. Va. Nov. 8, 2010), *report and recommendation adopted*, No. 5:10-CV-00528, 2011 WL 9387 (S.D.W. Va. Jan. 3, 2011) (citing *Jones v. Bock,* 549 U.S. 199, 204,

(2007); *McCarthy v. Madigan,* 503 U.S. 140, 144–45 (1992)). As Respondent explains in his response, administrative remedies in federal prisons involve grievance proceedings at the institutional level and appellate review to the Regional Director followed by appeal to the so-called Central Office. (ECF No. 6 at 10).

Respondent concedes that Lacy could face prejudice if his claim is dismissed for failure to exhaust, but blames the untimeliness of his appeal on Lacy's own conduct in failing to timely pursue appeal to the Central Office. (ECF No. 6 at 12). In his reply, Lacy provides an explanation as to why he was late in filing his appeal—namely, because prison staff refused to give him the necessary forms. (ECF No. 10 at 8–9).

This Court has previously recognized, in the analogous context of § 1983 lawsuits, that it is only when the record makes it clear that a litigant has failed to exhaust available administrative remedies that the issue should be resolved on a motion to dismiss. *See Assi v. W. Reg'l Jail*, No. 3:18-CV-00517, 2019 WL 6769013, at *6 (S.D.W. Va. Nov. 21, 2019), *report and recommendation adopted*, No. CV 3:18-0517, 2019 WL 6740613 (S.D.W. Va. Dec. 11, 2019). At this stage of the litigation, neither party has had an opportunity to develop and produce evidence determinative of the exhaustion issue. Based on the limited record before the Court and Lacy's claim that his ability to exhaust his remedies properly was impeded by BOP employees, it would be premature to dismiss the complaint for failure to exhaust administrative remedies. *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *see also Spradlin v. Rodes*, No. 3:16-

7

CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849 (S.D.W. Va. Sept. 25, 2017) (same); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted…determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). Therefore, the undersigned **FINDS** that Respondent's motion to dismiss on the ground of lack of exhaustion is premature and should be denied.

### B.   *Due process*

The Due Process Clause of the Fifth Amendment to the United States Constitution ("Fifth Amendment") protects inmates from deprivations of life, liberty, or property without due process of law. Lacy has a constitutionally protected liberty interest in his GCT, as such time impacts the duration of his sentence. *See, e.g. Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at *5 (S.D.W. Va. Jan. 5, 2015) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). Accordingly, when a federal prisoner is subject to a disciplinary proceeding that may result in the loss of GCT, the prisoner is guaranteed certain minimal requirements of procedural due process, including:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)

(citing *Wolff,* 418 U.S. at 563–567). The DHO follows a procedure that incorporates these due process protections. *See* 28 C.F.R. § 541.8.

Here, Lacy asserts that he "has not received all the due process safeguards afforded to him" under *Wolff* although he does not specify which aspects of his hearing were deficient. (ECF No. 10 at 6). He later contends that the DHO "did not evince an open-mind," was not receptive to Lacy's argument that medication side effects caused his inability to urinate, and "exhibited a prejudicial, deleterious and biased disposition" toward him at both hearings. (*Id.* at 13).

An inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. Prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings, however. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Nevertheless, "[t]he touchstone of due process is freedom from arbitrary governmental action," *Ponte v. Real*, 471 U.S. 491, 495 (1985) (citing *Wolff*, 418 U.S. at 558), and "[t]he due process requirements for a prison disciplinary hearing…are not so lax as to let stand the decision of a biased hearing officer." *Edwards v. Balisok*, 520 U.S. 641, 647, (1997). BOP regulations provide that the "DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b).

"While a 'fair trial in a fair tribunal is a basic requirement of due process,' not all claims of bias rise to a constitutional level.'" *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "In order to prevail in a deprivation of due process claim, a defendant must show a level of bias that made 'fair judgment impossible.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994). Government officials, including prison hearing officers, are "presumed to act in good

9

faith." *Worrell v. Deboo*, No. CIV.A. 5:07CV90, 2009 WL 1423923, at *3 (N.D.W. Va. May 20, 2009) (quoting *Bridge v. United States Parole Comm'n*, 981 F.2d 97, 106 (3d Cir.1992)). DHOs are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *Piggie v. Cotton,* 342 F.3d 660, 666 (7th Cir.2003). Accordingly, "prisoners' claims of bias and retaliation are to be viewed with skepticism." *Wheeler v. Perdue*, No. 1:14CV36, 2015 WL 366412, at *8 (N.D.W. Va. Jan. 27, 2015) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996)). For this court to find that the DHO was biased against Lacy, "there must be some substantial countervailing reason to conclude that [he was] actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004). This presumption of impartiality is especially strong where the inmate alleges a hearing officer was biased, but fails to point to any specific irregularities in a hearing which comported with due process. *See Dunne v. Olson*, 67 F. App'x 939, 944 (7th Cir. 2003) ("[N]or has [the petitioner] pointed to any irregularities in the process to rebut the presumption that hearing officers act in good faith."); *see also DePaola v. Clarke*, No. 7:17CV00028, 2019 WL 1370882, at *6 (W.D. Va. Mar. 26, 2019) (dismissing the petitioner's claim that DHO displayed impartiality prior to hearing where claim was undermined by record revealing a fair hearing); *Smith v. Masters,* No. 1:15-CV-11533, 2017 WL 1064032, at *3 (S.D.W. Va. Feb. 16, 2017), *report and recommendation adopted sub nom. Smith v. Romero*, No. CV 1:15-11533, 2017 WL 1058988 (S.D.W. Va. Mar. 20, 2017) (dismissing claim of bias where record revealed the DHO "made reasoned decisions based upon the evidence.") *Myrieckes v. Caraway,* No. CIV.A. L-11-917, 2012 WL 527585, at *4 (D. Md. Feb. 16, 2012); (noting that record of fair hearing suggested proceedings were not tainted by bias).

Lacy's bare assertion that the DHO was biased against him is not sufficient to

10

support a finding that the disciplinary proceedings were violative of Lacy's due process rights. *Fogg v. Smith*, No. 5:18-HC-02052-D, 2019 WL 3561519, at *4 (E.D.N.C. June 13, 2019), *report and recommendation adopted*, No. 5:18-HC-2052-D, 2019 WL 3611262 (E.D.N.C. Aug. 5, 2019) (finding that "unsupported, conclusory allegations" of bias are insufficient to indicate a due process violation under *Wolff*); *Vilarchao v. Joyner*, No. 518CV01291MGLKDW, 2018 WL 7107930, at *7–8 (D.S.C. Nov. 20, 2018), *report and recommendation adopted*, No. CV 5:18-01291-MGL, 2019 WL 295943 (D.S.C. Jan. 23, 2019); *Hurley v. Streeval*, No. 7:20CV246, 2021 WL 1170088 (W.D. Va. Mar. 26, 2021) (finding no bias even when petitioner alleged DHO remarked that lieutenants are "always right"). Clearly, the DHO gave greater weight to the statement from prison medical staff than to Lacy's assertion that his medication and BPH prevented him from providing a urine sample. However, assessing the weight of competing evidence is the role of the DHO and does not, without more, indicate bias. *Dunmore v. Wendt*, No. CIVA 1:05CV119, 2007 WL 1848017 (N.D.W. Va. June 25, 2007) (finding no bias despite claim that DHO ignored the statement of the prisoner's witness). Lacy has not alleged, and the record does not indicate, that the DHO was involved in the investigation or prosecution of his claim. *See Wolff*, 418 U.S. at 592 (Marshall, J., concurring) ("[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case."); *Neal v. United States Penitentiary Lee*, No. 7:20CV00295, 2021 WL 4498559 (W.D. Va. Sept. 28, 2021) (finding no bias when DHO had no part in investigating or prosecuting disciplinary violation). Accordingly, the undersigned **FINDS** that the DHO was impartial in compliance with the requirements of *Wolff*.

Lacy cites a decades-old Second Circuit case, *Kingsley v. Bureau of Prisons*, for the

11

proposition that a prisoner cannot be punished with the loss of GCT for the inability to produce a urine sample. (ECF No. 10 at 17); 937 F.2d 26 (2d Cir. 1991). However, the holding of *Kingsley* is much narrower than Lacy posits. In that case, a petitioner challenged the revocation of his GCT after he was found guilty of violating Code 110 despite claiming to be unable to urinate during the allotted time due to nervousness. The Second Circuit held that the petitioner's due process rights were violated because the DHO refused to allow him to present witnesses at the disciplinary hearing. While both Lacy and the petitioner in *Kingsley* offered reasons besides outright refusal to explain the failure to produce a urine sample, Lacy has ***not*** shown that he—like Kingsley—was denied the procedural safeguards guaranteed by *Wolff*.

Lacy has provided no other basis for his assertion that the disciplinary procedure violated his due process rights as outlined in *Wolff*. Therefore, the undersigned **FINDS** that the procedure afforded to Lacy comports with due process and consequently he is not entitled to relief from the DHO's findings.

### C. *Sufficiency of the evidence*

Because Lacy's prison disciplinary procedure complied with the minimum due process requirements, the undersigned will consider whether sufficient evidence supports the DHO's conclusion that Lacy committed a prohibited act. Lacy decries the DHO's failure to give greater weight to his argument that his failure to provide a urine sample was the result of a medical condition and medication side effects rather than a willful refusal to comply. (ECF No. 10 at 11–12). He characterizes the DHO's view as "myopic" and asserts that the medical staff member who told the DHO that Lacy's records did not indicate he would have difficulty providing a urine sample "needs to conduct more in-depth research on the drugs he is prescribing to his patients before making an 'opinion'

12

on their side effects." (*Id.* at 11, 13).

This Court relies on the evidentiary standard set forth in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985). In *Hill*, the Supreme Court held that revocation of GCT in a prison disciplinary proceeding does not satisfy the requirements of due process "unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* at 454. This standard is "extremely broad in scope and presents a very low burden for prison officials to meet." *Tyler v. Hooks*, 945 F.3d 159, 171 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2785 (2020). Nevertheless, "if 'some evidence' is to be distinguished from 'no evidence,' it must possess at least some minimal probative value if it is to be found adequate to satisfy the requirement of the Due Process Clause." *Id.* (quoting *Goff v. Burton*, 91 F.3d 1188, 1192 (8th Cir. 1996)).

The evidence in Lacy's case, as summarized in the DHO Hearing Report, includes statements by the reporting officer indicating that Lacy did not provide a urine sample, the memorandum from a prison medical staff professional opining that Lacy's medical records did not substantiate his claim that he was physically unable to provide a sample upon request, Lacy's statements admitting he did not provide a sample but insisting he was unable to do so, and the lack of evidence that Lacy had a medical or psychological condition that hampered his ability to urinate. (ECF No. 6-1 at 26). Even if the evidence against Lacy, like the evidence presented in *Hill*, "might be characterized as meager," *Hill*, 472 U.S. at 457, it still constitutes the requisite "modicum of evidence" in order "to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455.

The "some evidence" standard provides an extremely limited opportunity for judicial review of prison disciplinary matters, and the Fourth Circuit recently had

occasion to explore its outer bounds. In what it cautions is a "very rare case," in *Tyler v. Hooks*, the Fourth Circuit held that federal habeas relief was available to restore Casey Tyler's GCT "due to a total absence of evidence in the record, even under the 'some evidence' standard" that the inmate had committed the act with which he had been charged. 945 F.3d at 173. There, the only evidence in the record was "conclusory statements of culpability" by officers that Tyler had made false allegations about a staff member, rather than "affirmative evidence of Tyler's guilt." *Id.* at 172. These statements were deemed insufficient evidence, because they were essentially just accusations rather than a basis "for a reviewing officer to make a reasoned and independent judgment on the matter at issue." *Id.* (citations omitted).

The instant action is not like the "rare case" the Fourth Circuit described in *Tyler*. The Fourth Circuit has upheld an inmate's conviction for possessing escape tools based on the unsworn statement of an anonymous informant, where the only additional evidence was that escape tools were found in the prison, and the inmate had previously escaped from a different prison. *See Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *see also Payne v. Craig*, No. CIV.A. 5:08-0989, 2011 WL 4021321, at *3 n.3 (S.D.W. Va. June 30, 2011), *report and recommendation adopted*, No. 5:08-CV-00989, 2011 WL 4021320 (S.D.W. Va. Sept. 9, 2011) (upholding sanctions for fighting based on statement of other involved inmate and injuries consistent with the inmate's assertions); *Graham v. Warden of FCI-Cumberland*, No. GJH-16-2895, 2017 WL 4217105, at *5 (D. Md. Sept. 20, 2017) (upholding DHO finding based on account of inmates that the petitioner engaged in a fight). Districts in this Circuit have routinely held that the "some evidence" standard is met with evidence as limited as that upon which the DHO relied at Lacy's hearing. *See, e.g.*, *Masengale v. Streeval*, No. 7:19-CV-543, 2020 WL 4227559 (W.D. Va.

July 23, 2020) (holding that "some evidence" standard was met when DHO considered the charging officer's report that contraband was found in the inmate's possession and positive identification of the substances); *Murray v. Tina*, No. 5:18-CT-3026-FL, 2020 WL 1490696 (E.D.N.C. Mar. 24, 2020) (finding that "some evidence" supported disciplinary sanction when shank was found in cell despite inmate's testimony that he did not know the shank was there and it must belong to former occupant); *Edmonds v. Ziegler*, No. 5:10-cv-01374, 2014 WL 321050 (S.D. W. Va. Jan. 29, 2014) (finding that the "some evidence" standard is met when weapon found in cell even when petitioner claimed he had no knowledge of it).

District courts routinely uphold disciplinary sanctions in circumstances similar to those presented here. *See, e.g.*, *Khan v. Langford*, No. CV 17-2750-VBF (KS), 2018 WL 1270974, at *5 (C.D. Cal. Jan. 29, 2018), *report and recommendation adopted*, No. LACV1702750VBFKS, 2018 WL 1271204 (C.D. Cal. Mar. 8, 2018) (upholding disciplinary sanctions where procedural safeguards were in place despite prisoner's contention he was unable to rebut prison medical staff's email concerning his health conditions); *Garza v. English*, No. 18-3226-JWL, 2018 WL 6570493, at *7 (D. Kan. Dec. 13, 2018) (upholding disciplinary sanctions under the "some evidence" standard even when petitioner expressed willingness to provide a sample and provided statements concerning his medications). Under BOP regulation, failure to provide a urine sample in the allotted time period creates a rebuttable presumption that such failure was intentional, and the evidence Lacy provided to the DHO was apparently not enough to overcome the presumption. *See* 28 C.F.R. § 550.31(a); *see also Garten v. Bradley*, No. 717CV01584MHHHNJ, 2020 WL 890784, at *3 (N.D. Ala. Jan. 29, 2020), *report and recommendation adopted sub nom. Garten v. Fed. Bureau of Prisons*, No.

15

717CV01584MHHHNJ, 2020 WL 886498 (N.D. Ala. Feb. 24, 2020); *Julick v. Snyder-Norris*, No. 16-CV-107-HRW, 2016 WL 6246790, at *7 (E.D. Ky. Oct. 25, 2016), *aff'd*, No. 16-6652, 2017 WL 5485453 (6th Cir. Mar. 1, 2017). This relevant inquiry is whether some evidence supports the DHO's decision; it is not the province of this Court to assess the correctness of the decision. *Masengale v. Streeval*, No. 7:19-CV-543, 2020 WL 4227559, at *4 (W.D. Va. July 23, 2020) (""[I]t is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all."). Without doubting the sincerity of Lacy's claim that he was physically unable to provide a urine sample on request, the Court lacks authority to grant Lacy relief when the disciplinary proceedings comported with due process and the DHO's decision is supported by some evidence.

In accordance with the above precedent, it is clear that "some evidence" supports the DHO's decision. Therefore, the undersigned **FINDS** that Lacy is not entitled to relief from the DHO's finding and further **FINDS** that his petition must be dismissed.

### IV.   Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Lacy's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) be **DENIED,** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall

have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** November 16, 2021

Cheryl A. Eifert
United States Magistrate Judge